UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
DOCKET NO. 5:20-cv-00167-FDW

| | |
|---|---|
| REGINA TUTTLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | ORDER |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

THIS MATTER is before the Court on Claimant Regina Tuttle's ("Tuttle") Motion for Summary Judgment (Doc. No. 11) filed June 1, 2021, Acting Commissioner of Social Security Andrew M. Saul's ("Commissioner") Motion for Summary Judgment (Doc. No. 13) filed July 30, 2021, and Tuttle's Response (Doc. No. 15) filed August 13, 2021. Tuttle seeks review of an unfavorable administrative decision on her application for Disability and Disability Insurance Benefits ("DIB").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court GRANTS Tuttle's Motion for Summary Judgment; DENIES Commissioner's Motion for Summary Judgment; and REVERSES the Commissioner's decision and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Order.[1]

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405.

1

I. BACKGROUND

Tuttle filed an application for Title II benefits and Part A of Title XVIII on March 1, 2018 (Tr. 202). Tuttle alleges disability beginning February 13, 2018 (Tr. 202). After her application was denied initially and upon reconsideration, Tuttle requested a hearing (Tr. 142). After a hearing on October 7, 2019 (Tr. 32, 58, 174), the ALJ issued an unfavorable decision (Tr. 7). Tuttle's subsequent request for review by the Appeals Council was denied. (Tr. 1).

The ALJ found Tuttle had not engaged in substantial gainful activity since February 13, 2018, and met the insured status requirements through December 31, 2021. (Tr. 12). The ALJ found Tuttle to have the following severe impairments: "myotonia congenita; degenerative disc disease of the thoracic spine; degenerative disc disease of the cervical spine and fusion surgery; low vision with muscular dystrophy; anxiety; and depressive order[.]" (Tr. 12). The ALJ determined Tuttle did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (Tr. 13). The ALJ then found Tuttle had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b):

> [E]xcept she is limited to occasional stooping; no climbing of ladders, ropes, or scaffolds; occasional feeling and overhead reaching with the left upper extremity; should avoid ordinary hazards in the workplace such as boxes on the floor and doors ajar; can have no exposure to unprotected heights or dangerous machinery; is limited to occasional interaction with supervisors, coworkers, or the general public; simple, routine tasks; and can tolerate occasional changes in a routine work setting.

(Tr. 14). In response to a hypothetical that factored in Tuttle's age, education, work experience, and RFC, the vocational expert ("VE") testified that Tuttle was unable to perform her past relevant work as a home attendant, a nurse assistant, a receptionist, an order clerk, and a shipping/receiving clerk. (Tr. 20). However, the VE testified, based upon the same hypothetical, Tuttle could perform

other jobs that exist in significant numbers in the national economy. (Tr. 55). As a result, the ALJ concluded Tuttle was not disabled, as defined under the Social Security Act, from February 13, 2018, through the date of the ALJ's decision. (Tr. 22).

Tuttle has exhausted all administrative remedies and now appeals pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). This Court does not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence;

"[w]here conflicting evidence allows reasonable minds to differ," we defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

4

WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

"At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

On appeal, Tuttle claims the ALJ erred by: (1) failing to properly evaluate all the pertinent evidence and support her conclusions in determining the RFC; (2) failing to support with

5

Case 5:20-cv-00167-FDW   Document 17   Filed 02/15/22   Page 5 of 10

substantial evidence the determination Tuttle's statements regarding symptoms are only partially consistent with the record; and (3) failing to resolve an apparent conflict between the VE testimony and the DOT. (Doc. No. p. 8). The Court agrees that, on the record before the Court, remand is necessary.

In step five of an ALJ's analysis, the Commissioner has the burden "to prove . . . the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's [RFC], age, education, and work experience." Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). The ALJ primarily uses the DOT to determine "whether sufficient other work exists for the claimant in the national economy." Pearson, 810 F.3d at 207. ALJs may call upon VEs for "complex vocational issues." Policy Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000). The VE's testimony should be consistent with the information provided in the DOT. Id.

Occasionally, the VE's testimony and the DOT are inconsistent. When this is the case, the ALJ is required to ask the VE if the testimony conflicts with the DOT. Pearson, 810 F.3d at 207–08. The ALJ's obligation is not absolved by the VE's testimony negating a conflict. Id. at 208. "The ALJ independently must identify conflicts between the expert's testimony and the [DOT]. Id. at 209. If the VE's testimony "appears to conflict with the [DOT]," the ALJ has a duty to "obtain a reasonable explanation for the apparent conflict." Id. at 208 (quoting SSR 00–4p, at *4). The ALJ must go on to "explain the resolution of the conflict irrespective of how the conflict was identified." Id. at 208 (quoting SSR 00–4p, at *2, *4). "An ALJ has not fully developed the record

if it contains an unresolved conflict between the expert's testimony and the DOT. Nor has the ALJ fulfilled this duty if [s]he ignores an apparent conflict because the expert testified that no conflict existed." Id. at 210.

Pearson v. Colvin is an instructive case. 810 F.3d 204 (4th Cir. 2015). In Pearson, the claimant challenged the ALJ's finding that the claimant could perform certain occupations because the DOT listed frequent reaching as a requirement for each occupation. Id. at 207. Pearson was limited to "occasionally reach[ing] upward" with one of his arms. Id. at 210. The court determined the VE's testimony could not be relied on as substantial evidence to deny benefits—if the ALJ did not obtain an explanation and if that explanation was not a "reasonable basis for relying on the expert's testimony." Id. at 211. The court looked to the definition of "reaching" within the DOT and reasoned that while the court could "guess what these occupations require in reality," the ALJ needed to ask the VE if in fact the occupations required frequent overhead reaching with both upper extremities. Id. The ALJ is not limited to finding the claimant unable to perform the selected jobs just because of the existence of an apparent conflict. Id. Instead, "it simply means the ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements." Id.

Tuttle has an RFC to perform light work with multiple limitations. Accordingly, the ALJ requested the VE examine and determine whether there were jobs in significant numbers in the economy to address the additional limitations, including "occasional feeling and overhead reaching with the left upper extremity." (Tr. 14). The VE determined Tuttle could perform the following jobs: (1) a routine clerk, with 40,000 jobs nationally (DOT No. 222.687-022); (2) a router, with 54,000 jobs nationally (DOT No. 222.587-038); and (3) a marker, with 300,000 jobs

nationally (DOT No. 209.587-034). (Tr. 21). The ALJ asked the VE whether these answers were consistent with the DOT; the VE affirmed this, but further stated, "[T]he DOT does not distinguish between climbing ladders, stairs. Does not address overhead reaching, and changes in the workplace. The frequency of changes in the workplace. So my response in those areas was based on my experience and training." (Tr. 55). The ALJ stated the following in her decision, "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Otherwise, it is based on the expert's professional experience and training. The undersigned finds that this was a sufficient number of jobs." (Tr. 21).

Tuttle argues despite the ALJ's reliance on the VE testimony as consistent with the DOT, the router and routing clerk jobs require frequent reaching and are therefore inconsistent with the limitations within Tuttle's RFC determination. Commissioner argues to the extent a conflict existed between the VE's testimony and the DOT, the VE communicated these jobs in the DOT did not specify overhead reaching. Therefore, Commissioner argues the VE based her testimony on her own experience and training rather than the DOT. According to Commissioner, to the extent a conflict existed in this case, the ALJ followed SSR 00-4p, because she asked and received an explanation; therefore, the ALJ could rely on VE's testimony because of her "professional experience and training." (Doc. No. 14, p. 17). This Court agrees with Tuttle.

Like Pearson, the jobs listed by the VE expressly state "frequent reaching" within the job descriptions. (DOT No. 222.687-022; DOT No. 222.587-038; DOT No. 209.587-034). The jobs may not describe *overhead* reaching, but the definition of reaching within the DOT includes "[e]xtending hand(s) and arm(s) in any direction." Emp. & Training Admin., U.S. Dept. of Labor, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles,

8

Case 5:20-cv-00167-FDW   Document 17   Filed 02/15/22   Page 8 of 10

App. C, para. 8 (1993) (emphasis added).  To the extent there was an apparent conflict between the DOT and the VE's testimony, it was the ALJ's responsibility to investigate and resolve the apparent conflict.  See Lance v. Saul, 1:20-CV-00070-KDB, 2021 WL 1316016, at *5 (W.D.N.C. Apr. 8, 2021) ("[T]he ALJ's reliance on the VE's testimony at face value does not provide substantial evidence to support the ALJ's finding at step five.").  As stated in Pearson, "[T]he ALJ and the expert should address exactly what form of reaching the stated occupations require and whether the claimant can fulfill those requirements."  810 F.3d at 211.  If the jobs require more than occasional overhead reaching, then that requirement would reduce the actual number of jobs available for Tuttle.  Furthermore, that reduction could result in a different outcome to step five of the analysis, which requires work "exist in significant numbers in the national economy."  Id. (quoting 20 C.F.R. § 404.1560(c)).  Without further explanation, the Court is "left to guess about how the ALJ arrived at [her] conclusion."  Mascio, 780 F.3d at 637.

The record and the decision neither explain nor resolve this apparent conflict.  Accordingly, this Court finds the ALJ's decision at step five of the analysis is not supported by substantial evidence.  Remand is therefore appropriate so that the ALJ can provide an explanation for the apparent conflict.  As the Court has determined remand is required, the Court declines to consider any alleged errors not addressed herein.  The Court explicitly notes that in ordering remand pursuant to sentence four of 42 U.S.C. § 405(g), the Court does not take a position on the merits of Plaintiff's application for disability benefits nor does the Court express any opinion as to Plaintiff's other assignments of error.  The Court finds the ALJ's decision deficient for the reasons stated herein, and consequently, that decision as written cannot stand.  See, e.g., Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth

9

in the ALJ's decision[.]" (citations omitted)). In declining to address the other assignments of error in dicta here,[2] the Court notes that remand provides the opportunity for the ALJ to modify any prior basis for the prior decision in the new decision issued upon remand. "Under § 405(g), 'each final decision of the Secretary [is] reviewable by a separate piece of litigation,' and a sentence-four remand order 'terminate[s] the civil action' seeking judicial review of the Secretary's final decision." Shalala v. Schaefer, 509 U.S. 292, 299 (1993) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 624-25 (1990)).

IV. CONCLUSION

For the foregoing reasons, Tuttle's Motion for Summary Judgment (Doc. No. 11) is GRANTED; the Commissioner's Motion (Doc. No. 13) is DENIED; and the ALJ's determination is REVERSED and REMANDED to the Commissioner for further proceedings consistent with this ORDER.

IT IS SO ORDERED.

Signed: February 15, 2022

Frank D. Whitney
United States District Judge

---

[2] The Court recognizes the Fourth Circuit, on occasion, will address additional assignments of error notwithstanding an order to remand. See Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (noting that "[n]ormally, our opinion would end here, and we would not go beyond ordering the ALJ to apply the regulation that it failed to observe;" but then summarily directing the ALJ to provide a more detailed explanation as to other errors "in the interests of judicial efficiency . . . ."); Bird, 699 F.3d at 343 (citing Sharpe v. Dir., Office of Workers' Comp. Programs, 495 F.3d 125, 134 n. 16 (4th Cir. 2007) (providing instructions for ALJ to follow on remand regarding issues not dispositive on appeal); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984) ("Since the case must be reconsidered by the Secretary, we do provide some guidance as to a matter very likely to arise at the hearing which will occur.")).